FILED
United States Court of Appeals
Tenth Circuit

June 11, 2025

Christopher M. Wolpert
Clerk of Court

<u>PUBLISH</u>

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

KIRK ARDELL SJODIN, JR.,

    Defendant - Appellant.

No. 23-4069

_____

**Appeal from the United States District Court
for the District of Utah
(D.C. No. 4:22-CR-00105-RJS-PK-1)**
_____

Dean Sanderford, Assistant Federal Public Defender (Virginia L. Grady, Federal Public Defender, with him on the briefs), Office of the Federal Public Defender, Denver, Colorado, for Defendant-Appellant.

Briggs Matheson, Assistant United States Attorney (Trina A. Higgins, United States Attorney, with him on the brief), Office of the United States Attorney, Salt Lake City, Utah, for Plaintiff-Appellee.

_____

Before **BACHARACH**, **BALDOCK**, and **McHUGH**, Circuit Judges.
_____

**McHUGH**, Circuit Judge.
_____

A federal statute, 18 U.S.C. § 922(g), prohibits certain categories of

individuals from possessing firearms. The prohibited categories include convicted

felons—that is, persons who have been convicted of "a crime punishable by

imprisonment for a term exceeding one year." *Id*. § 922(g)(1). But not all prior convictions qualify as a felony for purposes of § 922(g)(1). A conviction that "has been expunged[] or set aside or for which a person has been pardoned or has had civil rights restored" does not count as a conviction for purposes of § 922(g)(1). *Id*. § 921(a)(20).[1]

To be convicted for violating § 922(g), an individual found in possession of a firearm must "knowingly violate[]" the statute. *Id*. § 924(a)(8).[2] In *Rehaif v. United States*, 588 U.S. 225 (2019), the Supreme Court clarified the mental-state requirement for § 922(g) offenses as set out in § 924(a)(8). The Court focused on the scope of the word "knowingly," finding it applied to both the defendant's conduct as well as his prohibited status. *Id*. at 237. Thus, to obtain a felon-in-possession conviction after *Rehaif*, the government "must prove not only that the defendant knew he possessed a firearm, but also that he knew he was a felon when he possessed" it. *Greer v. United States*, 593 U.S. 503, 505–06 (2021) (emphasis omitted).

---

[1] Although such a conviction does count under § 922(g)(1) if the "pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms." 18 U.S.C. § 921(a)(20).

[2] The statute's internal numbering has been updated since *Rehaif v. United States*, 588 U.S. 225 (2019) was published. The post-2022 version of the statute codifies the punishment for violating 28 U.S.C. § 922(g) at § 924(a)(8), while the pre-2022 version of the statute, as cited in *Rehaif*, codifies the punishment for violating 28 U.S.C. § 921(g) at § 924(a)(2).

This case requires us to decide whether sufficient evidence supports Defendant-Appellant Kirk Ardell Sjodin Jr.'s felon-in-possession conviction. Mr. Sjodin argues he presented evidence that he subjectively believed his rights had been restored at trial. Had Mr. Sjodin presented such evidence, we would need to decide a question unsettled in our Circuit—that is, whether evidence of a mistaken but genuine subjective belief that a conviction falls into one of 18 U.S.C. § 921(a)(20)'s exclusions presents an affirmative defense, element-negating defense, or no defense at all under *Rehaif*. But Mr. Sjodin did not present any evidence regarding his subjective belief at trial. Consequently, we need not decide today how such a defense would be classified, if properly presented. And as the Government otherwise met its burden to prove the knowledge-of-status element, we hold sufficient evidence supports Mr. Sjodin's felon-in-possession conviction.

Mr. Sjodin's appeal also requires us to decide whether a California assault conviction is a categorical match with the federal definition of a crime of violence. We hold it is not. The California Supreme Court permits convictions under the assault statute for a mens rea less culpable than recklessness, *People v. Williams*, 29 P.3d 197, 200–04 (Cal. 2001), and under *Borden v. United States*, 593 U.S. 420, 445 (2021), such an offense cannot qualify as a crime of violence. We thus hold the district court plainly erred in sentencing Mr. Sjodin under the U.S. Sentencing Commission Guidelines (the "Guidelines") range that counted his California assault conviction as a crime of violence.

3

Exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), we affirm Mr. Sjodin's conviction, but remand for resentencing.

## I.    BACKGROUND

### A.    Facts

In 2003, Mr. Sjodin pleaded *nolo contendere* to two California state charges: (1) assault with a firearm and (2) unlawful firearm possession. *See* Cal. Penal Code §§ 245(a)(2) (2002), 1192.7(c)(8); 12021(c)(1). He served eight years for the assault conviction and eight months for the firearm possession conviction in California state prison.

In 2020, Mr. Sjodin was charged with several state misdemeanor crimes in Pawnee County, Oklahoma, including carrying a firearm while under the influence. *See* Okla. Stat. tit. 21, § 1289.9. He pleaded guilty to all charges. On the plea form, Mr. Sjodin's defense attorney, Ron McGee, initially wrote "yes" in response to a question asking whether Mr. Sjodin had "previously been convicted of a felony." Supp. App. Vol. II at 58. When Mr. Sjodin informed him his California conviction occurred in 2003, however, Mr. McGee scratched that answer and wrote "no," *id.,* implying to Mr. Sjodin that because the sentence was more than ten years old it did not need to be listed, *see* ROA Vol. II at 502.[3] In findings related to the plea, the Oklahoma trial court checked a box indicating that Mr. Sjodin had no prior felony convictions.

---

[3] The Government initially alleged that Mr. Sjodin had lied on the plea form, but it later affirmatively disclaimed the allegation.

In 2022, Mr. Sjodin was arrested for driving under the influence in St. George, Utah. During an inventory search of Mr. Sjodin's vehicle, police officers found a loaded.22-caliber Marlin rifle (the "rifle") with a round in the chamber, as well as sixteen rounds of .22 ammunition. He was booked on multiple state charges, including unlawful firearm possession.

### B.     Procedural History

### 1.     Indictment and Pretrial Proceedings

A federal grand jury in the District of Utah subsequently indicted Mr. Sjodin for possessing a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g)(1). Mr. Sjodin pleaded not guilty. He elected to represent himself, with the Federal Public Defender serving as advisory counsel.

Mr. Sjodin moved several times to dismiss the indictment, reasoning that because the police found him with a gun in Oklahoma and he never faced a felon-in-possession charge, his civil rights must have been restored. In the same vein, Mr. Sjodin argued his rights had been "restored" by the state of Oklahoma once his parole supervision was transferred there. ROA Vol. II at 64. He also advanced other theories for why he was no longer a felon. For instance, he argued that he was "wrongfully convicted in the state of California." *Id.* at 193. The district court rejected these arguments and found that the indictment alleged "all of the essential elements" of a violation of § 922(g)(1). *Id.* at 267. Throughout pretrial proceedings, Mr. Sjodin continued to raise his prosecution in Pawnee County, Oklahoma, as evidence that his civil rights had been restored.

In anticipation of trial, the district court granted Mr. Sjodin's motion to subpoena Mr. McGee (his defense lawyer in the Oklahoma case). According to Mr. Sjodin, Mr. McGee told him that "[he] was not a restricted person," which the court agreed was relevant because Mr. Sjodin's "knowledge, or lack thereof, of his restricted status is a key issue in dispute in this case." ROA Vol. II at 423.

During the final pretrial conference, the district court explained that it read *Rehaif* to put the burden on the Government to "prove beyond a reasonable doubt that Mr. Sjodin knowingly possessed a firearm, and that he knew that he was in a category of persons that were prohibited from possessing a firearm, which . . . puts his subjective intent at issue at trial." ROA Vol. III at 149. The court noted that Mr. Sjodin could "testify [] about his subjective belief about what [the Oklahoma case] meant." *Id*. at 150. Mr. Sjodin waived his right to a jury and elected to have a bench trail.

## 2.    Bench Trial

### a.    *Stipulations and trial evidence*

At trial, Mr. Sjodin stipulated to several key facts: that he knowingly possessed the rifle on the date charged; he had traveled with the rifle from Oklahoma to Utah; he was "at least initially" convicted of a felony in California; and he had served more than a year in prison for that offense. *Id*. at 290. These stipulations centered the dispute on whether Mr. Sjodin knew he was a convicted felon when he possessed the rifle in 2022.

6

Next, the Government proffered the evidence it was prepared to introduce to establish the stipulated elements. The court admitted as Government exhibits the certified records from Mr. Sjodin's California conviction. Turning to the element in dispute—Mr. Sjodin's knowledge of his prohibited status at the time of the offense—the Government told the court there was a "problem" because it "need[ed] to know legally what [the element] is." *Id*. at 307.

In response, the court stated that Mr. Sjodin was raising "an affirmative defense . . . that his rights were restored or that . . . he had a reasonable good faith belief that he could possess the firearm because of something that happened after the conviction." *Id*. at 309. But the court also described the defense's allocation of the burden of proof as "a question of reasonable doubt." *Id*. The Government then took the position that the stipulations and records from the California case established the key element in dispute and rested its case. After a recess, Mr. Sjodin informed the court that he had decided not to call Mr. McGee—who was waiting in the back of the courtroom—as a witness. Mr. Sjodin did wish, however, to admit into evidence two records from the Oklahoma case: a certified docket sheet and an uncertified copy of the judgment and sentence. The court admitted both documents into evidence.

Mr. Sjodin also attempted to admit a record related to the transfer of his parole supervision from California to Oklahoma, claiming it gave "weight as to the jurisdictional authority on the [Oklahoma] case." *Id*. at 331. The court refused to admit this uncertified document because its authenticity had not been verified. It then asked if Mr. Sjodin "wish[ed] to present a case in chief." *Id*. at 339. Mr. Sjodin rested

7

without admitting other exhibits, calling any witnesses, or taking the stand to testify. The Government declined to introduce any evidence in rebuttal; in its view, the evidence admitted satisfied its burden of proof.

### b.    Closing arguments

During closing argument, the Government recognized that it "may be [Mr. Sjodin's] belief" that the Oklahoma misdemeanor convictions "equate[d] to an expungement." *Id*. at 344. But in its view, "subjective knowledge is not an element of this crime." *Id*. at 341. Instead, the knowledge-of-status "element simply require[d]" the Government to "show that [Mr. Sjodin] knew he had been convicted of a felon[y]." *Id*. at 344. And the Government maintained it had been satisfied here because Mr. Sjodin admitted "he ha[d] in fact gone to prison for almost nine years." *Id*.

At this point, the district court interjected that "the position" the Government was "advocating . . . can't be the law." *Id*. at 345. Under the Government's "conception of things[,] a defendant could know he had previously been convicted of a felony, later received a pardon, [yet] he's still guilty of this offense." *Id*. The court found such a position unfounded. In its view what mattered for the disputed element was the defendant's "knowledge that he's in that class at the time of the offense." *Id*. at 347.

The court concluded that a defendant may argue that he "believes for one reason or another [that] he's no longer a member of the restricted class," provided "there's a factual record to support" that defense. *Id*. at 350. The court further

8

acknowledged that "there must be some subjective component to this question." *Id*. But it struggled to determine what "legal standard" would apply "in evaluating that subjective intent." *Id*. The court pondered whether it would be objective reasonableness, subjective reasonableness, or "whether in its totality the defendant's evidence raises a reasonable doubt." *Id*. But it could not "find any guidance on this at all." *Id*.

The Government acknowledged that it was "in the same boat." *Id*. After spending "ample time trying to get to this issue," it could not determine "the standard." *Id*. But the Government stated that regardless, it was "not really prepared to concede that there's a subjective component." *Id*. at 352. The court opined that perhaps there was no "evidence in [this] case regarding Mr. Sjodin's subjective intent," leaving just the "legal question" of whether Mr. Sjodin was still a felon. *Id*. at 353. In his closing argument, Mr. Sjodin denied that he was obligated to introduce evidence to disprove the knowledge element of the offense. He claimed that his rights to possess firearms had been automatically restored. He reasoned that if they hadn't been, he would have received a notification that he was a restricted person in Oklahoma or Utah, and he received no such notification. Following closing arguments, the court stated it would deliver its ruling at a later date and adjourned.

### 3.    The District Court's Findings of Fact and Conclusions of Law

A few weeks after the trial, the court issued written findings of fact and conclusions of law. The court acknowledged Mr. Sjodin's claim that he believed his rights had been restored. But it found that "Mr. Sjodin did not admit any evidence

into the trial record regarding his subjective belief about his status as a convicted felon subsequent to his conviction in the California Case." ROA Vol. IV at 56. Nor did he introduce "any evidence from the California Case purporting to expunge, pardon, or restore his rights in the California Case." *Id*. For that reason, the court concluded, it did not need to assess "how a defendant's subjective belief impacts the knowledge requirement set forth in *Rehaif*." *Id*. at 56–57 n.18. The only question remaining was "whether the Oklahoma Case restored Mr. Sjodin's rights as a matter of law." *Id*. at 56.

The district court answered that question in the negative. Mr. Sjodin's two admitted exhibits—the documents from the Oklahoma case—did not reference his "status as a felon" or "purport to restore Mr. Sjodin's rights or expunge his prior convictions." ROA Vol. IV at 57. And though "California law controls the modification of Mr. Sjodin's California Case convictions," the trial record contained "no evidence" that anything had happened to his convictions or his civil rights "under California law." *Id*. at 60. The court found Mr. Sjodin guilty of violating § 922(g)(1).

### 4.    Sentencing

A probation officer prepared a presentence investigation report ("PSR") that calculated Mr. Sjodin's Guidelines range. The PSR concluded that Mr. Sjodin's assault conviction under California Penal Code § 245(a)(2) qualified as a "crime of violence." ROA Vol. V at 85. This determination raised Mr. Sjodin's offense level from 14 to 20. *Id*.; *see* United States Sentencing Commission, *Guidelines Manuel* ("U.S.S.G." or "Guidelines") § 2K2.1(a)(4)(A), (6). That offense level, combined

with his criminal history category III, yielded an advisory Guidelines range of 41 to 51 months.

Mr. Sjodin did not object to the PSR's determination that his California conviction was a "crime of violence." The district court adopted the PSR's Guidelines range calculation, and sentenced Mr. Sjodin to 42 months in prison and three years of supervised release.

Mr. Sjodin filed a notice of appeal prematurely, and we abated the appeal pending the district court's entry of judgment. On August 31, 2023, the district court entered judgment, and we lifted the abatement on the following day.

**5.      Supplemental Briefing**

Mr. Sjodin filed his opening appellate brief pro se. We appointed Mr. Sjodin counsel and directed him to file a supplemental opening brief addressing, "in addition to any other issues counsel determines warrant additional briefing, (1) whether the [G]overnment bore the burden to prove that Mr. Sjodin knew his civil rights had not been restored and, if so, (2) whether it presented sufficient evidence to satisfy that burden." Dkt. 144 at 2. Mr. Sjodin filed a brief addressing those issues. He also raised a sentencing issue, asserting "the district court plainly erred in counting Mr. Sjodin's prior California assault conviction as a crime of violence under the [Guidelines]." Supp. Appellant's Br. at 15.

## II.    STANDARDS OF REVIEW

### A.    *Jury Instruction*

We review the refusal to give a requested jury instruction for abuse of discretion. *See United States v. Faust*, 795 F.3d 1243, 1251 (10th Cir. 2015). To determine whether the "court properly exercised its discretion, we review the jury instructions de novo to determine whether, as a whole, they accurately state the governing law and provide the jury with an accurate understanding of the relevant legal standards and factual issues in the case." *United States v. Moran*, 503 F.3d 1135, 1146 (10th Cir. 2007) (internal quotation marks omitted). Reversal is proper "only if prejudice results from a court's refusal to give a requested instruction." *Faust*, 795 F.3d at 1251 (quotation marks omitted).

### B.    *Sufficiency of the Evidence*

Generally, we review insufficient evidence claims de novo. *See United States v. Cota-Meza*, 367 F.3d 1218, 1223 (10th Cir. 2004). Under this standard, we "take the evidence—both direct and circumstantial, and reasonable inferences drawn from that evidence—in the light most favorable to the government and ask only whether a reasonable jury could find the defendant guilty beyond a reasonable doubt." *United States v. Joseph*, 108 F.4th 1273, 1280 (10th Cir. 2024) (quotation marks omitted). This court "may reverse only if no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Stepp*, 89 F.4th 826, 832 (10th Cir. 2023) (quotation marks omitted).

12

Because Mr. Sjodin did not move for a judgment of acquittal under Federal Rule of Criminal Procedure 29(a), his claim of insufficient evidence is relegated to plain error review. *See United States v. Rufai*, 732 F.3d 1175, 1189 (10th Cir. 2013); *United States v. Lin*, No. 24-6130, 2025 WL 894934, at *2 (10th Cir. Mar. 24, 2025) (unpublished).[4] "But a conviction in the absence of sufficient evidence will almost always satisfy all four plain-error requirements." *United States v. Freeman*, 70 F.4th 1265, 1273 (10th Cir. 2023) (internal quotation marks omitted). The review under the two standards ultimately "amount[s] to largely the same exercise." *Rufai*, 732 F.3d at 1189 (quotation marks omitted).

## C.    Sentencing

Because Mr. Sjodin did not object at trial, we review his sentencing challenge for plain error. *See United States v. Tisdale*, 248 F.3d 964, 981 (10th Cir. 2001). Under this standard of review, a defendant must show: "(1) error, (2) that is plain, (3) which affects the party's substantial rights, and (4) which seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Moore*, 30 F.4th 1021, 1025 (10th Cir. 2022) (quotation marks omitted). Plain error review "is not a grading system for trial judges." *Henderson v. United States*, 568 U.S. 266, 278 (2013). Rather, it strikes the "careful balancing of our need to encourage all trial participants to seek a fair and accurate trial the first time around

---

[4] We cite unpublished cases for their persuasive value only and do not treat them as binding authority. *See United States v. Ellis*, 23 F.4th 1228, 1238 n.6 (10th Cir. 2022).

13

against our insistence that obvious injustice be promptly redressed." *United States v. Young*, 470 U.S. 1, 15 (1985) (quoting *United States v. Frady*, 456 U.S. 152, 163 (1982)). Because a reviewing court must evaluate a claim of plain error against the entire record, each case "necessarily turns on its own facts." *Id*. at 16 (quoting *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 240 (1940)).

## III.   ANALYSIS

We first consider Mr. Sjodin's arguments concerning whether the Government's evidence was sufficient to meet its burden of proof for his felon-in-possession conviction. We conclude it was. We then turn to his sentencing challenge. Mr. Sjodin asserts the district court plainly erred in counting his prior California assault conviction as a crime of violence under the Guidelines. We agree. Finally, we review the bevy of undeveloped arguments Mr. Sjodin presented in his pro se opening brief and find all of them without merit.

### A.   *Sufficiency of the Evidence Challenge*

As the district court correctly ruled that Mr. Sjodin produced no evidence at trial that he believed his civil rights had been restored, we have little difficulty holding sufficient evidence supports his conviction. We thus affirm Mr. Sjodin's felon-in-possession conviction.

### 1.   Trial Evidence Supporting This Theory of Defense

Mr. Sjodin argues that the district court committed the "bench-trial equivalent" of erroneously "refusing to instruct the jury on the theory of defense" in concluding that he had presented "no evidence concerning his subjective belief." Supp.

14

Appellant's Br. at 22–23. For purposes of our review, we presume (as the Government did) that the jury-instruction analogy fits. This is because Mr. Sjodin's theory of defense fails even under the lightest burden that might be required—that necessary to support an element-negating defense.[5] And when a district court errs in considering the statutory elements of the offense, as Mr. Sjodin argues the court did here with § 922(g)(1)'s knowledge-of-status element, such error can be reviewed like an erroneous jury instruction on the elements of the offense. *See United States v. Johnson*, 979 F.3d 632, 636 (9th Cir. 2020) ("In a bench trial, a district court's legal error regarding the elements of the offense is reviewed in the same way we review an erroneous jury instruction regarding the elements of the offense."); *United States v. Griffin*, 119 F.4th 1001, 1009 (D.C. Cir. 2024) (same). But Mr. Sjodin's proffered "instruction" lacked the requisite factual basis. *See United States v. Toledo*, 739 F.3d 562, 568 (10th Cir. 2014) (explaining that a criminal "defendant is entitled to an instruction" for an element-negating defense "if the evidence viewed in his favor could support the defense").

To be sure, the parties disagree on which standard Mr. Sjodin must meet to prevail on this claim. The Government asserts Mr. Sjodin must "prove by a preponderance of the evidence that a reasonable jury could find in his favor," Supp. Appellee's Br. at 35 (internal quotation marks omitted), while Mr. Sjodin claims he needed to "only produce enough evidence to persuade the [factfinder] to have a

---

[5] As explained below, we assume without deciding that Mr. Sjodin is correct that his proposed defense is an element-negating one.

reasonable doubt about the [G]overnment's proof." Supp. Reply Br. at 3 (internal quotation marks omitted). Notably, the district court wrestled with this very question at trial. But ultimately it did not resolve what standard would apply to Mr. Sjodin's theory of defense. The court first classified the defense as affirmative. But the court later suggested the theory of defense involved the "question about whether reasonable doubt has been raised by [Mr. Sjodin]," ROA Vol. III at 345, which is the standard for an element-negating defense. *See United States v. Barrett*, 797 F.3d 1207, 1218 (10th Cir. 2015) (stating that when a defendant presents an element-negating defense he "need only produce enough evidence to persuade the jury to have a reasonable doubt" about that element). The court also struggled to determine whether a defendant's mistaken impression concerning the legal effect of a post-conviction event is a purely subjective issue or involves an objective component. The court could find no "guidance on this at all." ROA Vol. III at 350.

Although the Government was equally uncertain at trial, it now puts forward the Eighth Circuit's decision in *United States v. Burning Breast*, 8 F.4th 808 (8th Cir. 2021) as instructive of the question. There, the court found the defendant's sincere but mistaken belief that his gun rights had been restored under tribal law failed as a defense because his ignorance of the law was no excuse. *Id*. at 814–15. Although this holding appears to be in tension with *Rehaif*, we need not resolve that question today. *Rehaif*, 588 U.S. at 234 ("'[A] mistaken impression concerning the legal effect of some collateral matter [] that [] results in [the defendant] misunderstanding the full significance of his conduct[]' thereby negat[es] an element of the offense.") (quoting

16

1 LaFave & Scott, Substantive Criminal Law § 5.1(a) at 575 (1986)); *see also United States v. Boyd*, 999 F.3d 171, 181 (3d Cir. 2021) (stating that under *Rehaif* "a defendant may rebut the knowledge requirement of § 922(g) by arguing a *bona fide* mistake of law"). Here, even if we assign Mr. Sjodin the lightest burden required—that necessary to raise an element-negating defense—he fails to meet it.

Mr. Sjodin submitted only the two documents related to his Oklahoma conviction: a certified copy of the docket sheet and an uncertified copy of the judgment and sentence. As the Government points out, these exhibits "have nothing to say about his belief about rights-restoration or his status as a felon in California." Supp. Appellee's Br. at 29. This evidence does not provide a basis for a factfinder to infer Mr. Sjodin had a mistaken belief as to the legal effect of some post-conviction event on his status as a felon. Instead, his Oklahoma conviction reflects nothing more than the prosecutor's choice not to charge him with a felon-in-possession offense.

Certainly, "knowledge can be inferred from circumstantial evidence." *Rehaif*, 588 U.S. at 234 (quoting *Staples v. United States*, 511 U.S. 600, 615 n.11 (1994)). But Mr. Sjodin's case was bereft of circumstantial evidence that could support such inferences. The two documents admitted fail to note a post-conviction event (such as a pardon, expungement, or rights restoration) that could permit a jury to infer Mr. Sjodin had a mistaken belief as to the legal effect of such post-conviction event on his status. These exhibits also shed no light on his subjective belief about the

17

status of his civil rights, and his arguments to the district court were not evidence.[6]

*See, e.g.*, *Whittenburg v. Werner Enters. Inc.*, 561 F.3d 1122, 1131 (10th Cir. 2009)

("[C]ounsels' arguments are not evidence."). We agree that "[h]ad [Mr.] Sjodin

testified under oath or otherwise provided a basis for his belief that his rights had

been restored" he would have a "stronger argument." Supp. Appellee's Br. at 38. But

he ultimately provided no such evidence. Accordingly, the district court did not err in

ruling that the trial record contained no evidence that Mr. Sjodin believed his rights

had been restored. And in the absence of such evidence, the Government did not have

to prove Mr. Sjodin's knowledge that his rights to possess firearms had not been

restored.

## 2.    Sufficiency of the Evidence at Trial

Because the district court properly concluded that Mr. Sjodin had presented no

evidence suggesting he believed his civil rights had been restored at the time he

possessed the rifle, we now turn to whether the Government otherwise met its burden

to prove the knowledge-of-status element.[7] The prohibited status group consists of

---

[6] Mr. Sjodin also argues in his pro se opening brief that his defense attorney in the Oklahoma case, Mr. McGee, told him he was "not a restricted person" and that the plea agreement from that case supports Mr. McGee's opinion. Appellant's Br. at 24. We do not consider these arguments because they are based on facts not admitted at trial. Mr. Sjodin did not, for example, present testimony from Mr. McGee who was present in the courtroom or admit the plea agreement.

[7] Mr. Sjodin does not dispute the Government produced sufficient evidence to establish § 922(g)'s other elements in his case.

those "convicted in any court of[] a crime punishable by imprisonment for a term exceeding one year." 18 U.S.C. § 922(g)(1).

The Government proved at trial beyond a reasonable doubt that Mr. Sjodin knew his prohibited status at the time of the offense. Because he served eight years in prison for his California assault conviction, "he knew that the prior conviction ultimately led to a prison term of over a year." *United States v. Tignor*, 981 F.3d 826, 830 (10th Cir. 2020). Additionally, Mr. Sjodin stipulated to the fact of his prior felony. And the Government admitted records confirming the fact of his prior felony conviction. *See United States v. Folse*, 854 F. App'x 276, 282–83 (10th Cir. 2021) (unpublished) (stating that "under *Rehaif*" the government may "carry its burden of proof by introducing evidence concerning [the defendant's] criminal history"). This is more than enough for a factfinder to find beyond a reasonable doubt that Mr. Sjodin knew of his prohibited status at the time he possessed the rifle.

We thus conclude that a "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Stepp*, 89 F.4th at 832 (quotation marks omitted). Sufficient evidence therefore supports Mr. Sjodin's felon-in-possession conviction.

### B.    *Sentencing Challenge*

Mr. Sjodin contends the district court plainly erred in counting his California assault conviction as a crime of violence, which caused the Guidelines range for his offense to substantially increase. He argues that the assault statute, California Penal

19

Code § 245(a)(2), permits convictions based on reckless or grossly negligent conduct, and therefore cannot qualify as a crime of violence under the Guidelines. We agree.

1.      **Legal Framework**

   a.      *Crime of Violence*

If a defendant committed an offense after being convicted for a felony that qualifies as a "crime of violence," his base offense level may be enhanced. *See* U.S.S.G. § 2K2.1. The term "crime of violence," as used in U.S.S.G. § 2K2.1, is defined in U.S.S.G. § 4B1.2(a) and its accompanying commentary. *See id.* § 2K2.1 cmt. n.1. The term is defined as:

> any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—
>
> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (2) is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c).

U.S.S.G. § 4B1.2(a). The first of these definitions is called the "elements clause," and the second is the "enumerated clause." *United States v. Devereaux*, 91 F.4th 1361, 1363 n.4 (10th Cir. 2024).

To determine when a past offense qualifies as a crime of violence, courts employ the "familiar categorical approach." *Id.* at 1363. "The categorical approach focuses on the elements of the prior offense of conviction and not on the defendant's actual conduct underlying that prior conviction." *Id.* at 1364. Under this approach, "[i]f any—even the

least culpable—of the acts criminalized" do not meet the federal definition, "the statute of conviction does not categorically match the federal standard" and cannot be counted as a crime of violence under federal law. *United States v. Sanchez*, 13 F.4th 1063, 1078 (10th Cir. 2021) (quoting *Borden*, 593 U.S. at 424).

###### b.    California Assault Statute

Section 245(a)(2), the California statute under which Mr. Sjodin was convicted, makes it a crime to "commit[] an assault upon the person of another with a firearm." Under California law, "assault" is defined as "an unlawful attempt, coupled with present ability, to commit a violent injury on the person of another." Cal. Penal Code § 240.

## 2.    Plain Error Analysis

###### a.    Prong 1 and 2 – Plain Error

If the least culpable act criminalized under the California assault statute "would not be a 'crime of violence' under § 4B1.2(a), then any conviction under that statute will not qualify as a 'crime of violence' for a sentence enhancement under the Guidelines." *Devereaux*, 91 F.4th at 1364 (quotation marks omitted). This is the case "regardless of whether the conduct that led to [Mr. Sjodin's] prior conviction was in fact violent." *Id*. (quotation marks omitted). We first review whether a California assault conviction qualifies as a crime of violence under § 4B1.2(a)(2)'s elements clause and hold it does not. Then, we turn to whether the California assault conviction qualifies as "aggravated assault" under § 4B1.2(a)(2)'s enumerated clause and hold it does not. The reason behind both conclusions is the same: California caselaw permits § 245(a)(2) convictions with a mens rea less than recklessness.

i.    Elements clause analysis

In *Borden v. United States*, a plurality[8] of the Court held that crimes that include a mens rea of recklessness cannot qualify as "violent felonies" under the Armed Career Criminal Act. 593 U.S. at 429. In determining the meaning of "violent felony," the Court was "ultimately . . . determining the meaning of the term 'crime of violence.'" *Id*. at 437 (quoting *Leocal v. Ashcroft*, 543 U.S. 1, 11 (2004)); *see also United States v. Wray*, 776 F.3d 1182, 1184 (10th Cir. 2015) (stating the terms "violent felony" and "crime of violence" are "virtually identical"). The Court concluded that reckless conduct did not meet the standard for a "violent felony" under the elements clause because "[t]he phrase 'against another,' when modifying the 'use of force,' demands that the perpetrator direct his action at, or target, another individual," and "[r]eckless conduct is not aimed in that prescribed manner." *Borden*, 593 U.S. at 429. If a statute criminalizes a person's use of force against another when he only "consciously disregards a substantial and unjustifiable risk," the crime cannot qualify as a crime of violence under the elements clause. *Id*. at 427 (quoting Model Penal Code § 2.02(2)(c)).

At issue here is whether a violation of the California statute can be committed with a mens rea of recklessness or less. If either is possible, then *Borden* teaches that a conviction under this statute is not a crime of violence under the elements clause.

---

[8] The plurality opinion in *Borden v. United States*, 593 U.S. 420 (2021) is binding on this court. *See United States v. Kepler*, 74 F.4th 1292, 1302 n.11 (10th Cir. 2023) (holding the *Borden* plurality is controlling).

In applying the categorical approach to state offenses, we are bound by the highest state court's "interpretation of state law, including its determination of the elements" of the relevant crime. *Johnson v. United States*, 559 U.S. 133, 138 (2010). The prevailing definition of the California assault statute's mens rea comes from *Williams*, 29 P.3d at 200–04. There, the California Supreme Court "h[e]ld that assault does not require a specific intent to cause injury or a subjective awareness of the risk that an injury might occur." *Id*. at 204. Under *Williams*, "assault only requires [1] an intentional act and [2] actual knowledge of those facts sufficient to establish that the act by its nature will probably and directly result in the application of physical force against another." *Id*.

Here, the Government concedes that *Williams* is the California Supreme Court's "last word on the matter." Supp. Appellee's Br. at 47. But it argues that § 245(a), "as interpreted by the California Supreme Court, does not fit neatly into the Model Penal Code's traditional *mens rea* hierarchy, making its position on the culpability spectrum a challenge to pinpoint." Supp. Appellee's Br. at 46 (internal citations and quotation marks omitted). We disagree.

The mens rea criminalized by the California assault statute simply spans too wide on the "culpability spectrum" to constitute a crime of violence. The *Borden* Court, employing the Model Penal Code, defined recklessness as the "conscious[] disregard[ of] a substantial and unjustifiable risk." 593 U.S. at 427 (quoting Model Penal Code § 2.02(2)(c)). The California assault statute merely requires an intent to do the act that results in harm. *See* Cal. Penal Code § 240. For that reason, a

23

defendant can be guilty of assault under the California statute even when he lacks "a specific intent to cause injury or a subjective awareness of the risk that an injury might occur." *Williams*, 29 P.3d at 204. The least culpable conduct covered by the California assault statute, as interpreted in *Williams*, does not require an intent to apply force to another person, knowledge that that action will apply force on another, or subjective awareness of the risk of such force. *Id.* Instead, a "defendant who honestly believes that his act was not likely to result in a battery is still guilty of assault if a reasonable person, viewing the facts known to defendant, would find that the act would directly, naturally, and probably result in a battery." *Id.* at 203 n.3. *Borden*, on the other hand, requires an "aware[ness] that [a] result is practically certain to follow from [one's] conduct." 593 U.S. at 426 (quoting *United States v. Bailey*, 444 U.S. 394, 404 (1980)). The California assault statute's mens rea sweeps too broadly: mere volition does not prove the intent to apply force to another person.

The Government disagrees, arguing that *Williams*'s holding relates only to the consequences of physical force, and articulated a different mens rea for the use of force. But we agree with Mr. Sjodin that *Williams* "plainly establishes a single mens rea for the offense." Supp. Reply Br. at 12. Indeed, *Williams* clarifies the defendant need not be subjectively aware of the risk of battery. 29 P.3d at 203. This is just another way of explaining how the "reasonable person" standard functions—it is an objective test in which the defendant's subjective awareness of risk plays no part. *Id.* at 203 & n.3. Other California courts confirm this view. *See, e.g.*, *People v. Trujillo*,

181 Cal. App. 4th 1344, 1352 (2010) (stating that under *Williams*, "[t]he test is thus an objective one").[9]

### ii.    Enumerated offenses clause analysis

Similarly, the California assault statute does not qualify as a crime of violence under § 4B1.2(a)'s enumerated offenses clause. Here, the parties agree the only enumerated offense in the Guidelines that could encompass § 245(a)(2)'s "assault upon the person of another with a firearm" is "aggravated assault," § 4B1.2(a)(2). Every circuit to address the issue of what mens rea generic aggravated assault requires has held it is one of at least extreme indifference recklessness. *See United States v. Brasby*, 61 F.4th 127, 142 (3d Cir. 2023); *United States v. Simmons*, 917 F.3d 312, 318 (4th Cir. 2019); *United States v. Schneider*, 905 F.3d 1088, 1094–95 (8th Cir. 2018); *United States v. Garcia-Jimenez*, 807 F.3d 1079, 1085–87 (9th Cir. 2015); *United States v. McFalls*, 592 F.3d 707, 716–17 (6th Cir. 2010). Unlike ordinary recklessness, which requires conscious disregard of a substantial and unjustifiable risk, *Borden*, 593 U.S. at 427, extreme recklessness "manifest[s]

---

[9] The Ninth Circuit held the California assault statute failed to satisfy the elements clause after *Borden* because "it 'does not require . . . a subjective awareness of the risk that an injury might occur.'" *See United States v. Gomez*, 115 F.4th 987, 995 (9th Cir. 2024) (quoting *People v. Williams*, 29 P.3d 197, 204 (Cal. 2001)). Because the Ninth Circuit has recently granted en banc review of its decision in *Gomez*, we do not rely on it here. *See United States v. Gomez*, No. 23-435, 2025 WL 1100780, at *1 (9th Cir. Apr. 14, 2025). Instead, we are persuaded by the analysis of the California Supreme Court in *Williams*, 29 P.3d at 203.

extreme indifference to the value of human life." Model Penal Code § 211.1(2)(a); *see also United States v. Kepler*, 74 F.4th 1292, 1307 (10th Cir. 2023).

The Government agrees that "generic aggravated assault requires a *mens rea* of at least heightened recklessness." Supp. Appellee's Br. at 55. But it argues that "§ 245(a)[2] requires more culpability than ordinary recklessness." *Id.* As explained above, we disagree. Under *Williams*, the California assault statute does not limit its reach to uses of force with a mens rea greater than ordinary recklessness, much less extreme recklessness. It thus sweeps more broadly than generic assault. As a result, Mr. Sjodin's assault conviction fails to qualify as a crime of violence under § 4B1.2(a)'s enumerated offenses clause.

Because the California assault statute does not prohibit only the use of force with a mens rea greater than recklessness, Mr. Sjodin's assault conviction cannot qualify as a crime of violence under either the elements clause or the enumerated clause in light of *Borden*. Thus, the district court erred by classifying it as a crime of violence. And because *Williams* defined the mens rea requirement in the California assault statute as encompassing mere recklessness, the district court's error is plain.

b.      *Prong 3 – Prejudice*

There is no dispute that by counting Mr. Sjodin's conviction as a crime of violence, the district court raised his offense level from 14 to 20, *see* U.S.S.G. § 2K2.1(a)(4)(A), (6), which increased his guidelines range from 21 to 27 months to 41 to 51 months, *see* U.S.S.G. Ch. 5, Pt. A. In *Molina-Martinez v. United States*, 578 U.S. 189 (2016), the Court held that "[w]hen a defendant is sentenced under an incorrect

26

Guidelines range—whether or not the defendant's ultimate sentence falls within the correct range—the error itself can, and most often will, be sufficient to show a reasonable probability of a different outcome absent the error." *Id*. at 198. Thus, when a district court sentences a defendant under an incorrect Guidelines range, we presume prejudice. *See United States v. Sabillon-Umana*, 772 F.3d 1328, 1333–34 (10th Cir. 2014). Because the district court sentenced Mr. Sjodin within a Guidelines range that included a crime of violence enhancement, the prejudice prong of plain error has been satisfied.

### c.    *Prong 4 – Substantial Rights*

Finally, this court presumes Guidelines calculation errors seriously affect the fairness, integrity, and public reputation of judicial proceedings. *Id.* Mr. Sjodin has thus shown all four elements of plain error.

### C.    *Arguments Raised in Mr. Sjodin's Pro Se Brief*

Mr. Sjodin raises a bevy of undeveloped arguments in his pro se brief, none of which the supplemental briefing addresses. Because Mr. Sjodin represented himself in this briefing, this court construes his filings liberally. *See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). But his pro se status does not excuse him from complying with the procedural rules governing all parties. *See id*. And we cannot take on the role of his advocate by searching the record or constructing arguments for him. *See id*. Affording Mr. Sjodin the appropriate liberality, we conclude that none of his pro se arguments have merit.

### 1.    Acceptance of Responsibility

Mr. Sjodin first argues the district court erred by declining to decrease his offense level based on his having accepted responsibility for his offense. Under the Guidelines, "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense," the district court should "decrease the offense level by 2 levels." U.S.S.G. § 3E1.1(a). The defendant has the burden to prove his entitlement to this adjustment by a preponderance of the evidence. *See United States v. Hurst*, 94 F.4th 993, 1007 (10th Cir. 2024). "Whether a defendant is entitled to a reduction in offense level under § 3E1.1(a) is a question of fact that we review for clear error." *United States v. Collins*, 511 F.3d 1276, 1279 (10th Cir. 2008). "The sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. For this reason, the determination of the sentencing judge is entitled to great deference on review." U.S.S.G. § 3E1.1, comment (n.5).

Whether the defendant accepted responsibility depends "primarily upon pre-trial statements and conduct." *Id*. at comment (n.2). The district court found Mr. Sjodin had not established his acceptance of responsibility. The court highlighted that Mr. Sjodin had waited until the morning of trial to make his factual stipulations. As a result, the court observed, the "lawyers prepared for trial. They did all the work." ROA Vol. VI at 80. And the "courtroom was full of people" honoring their trial subpoenas. *Id*.

The district court correctly focused on Mr. Sjodin's pretrial statements and conduct. *See* U.S.S.G. § 3E1.1, comment (n.2). It was not until the morning of trial that Mr. Sjodin stipulated to some elements of the charged offense. And he still maintained

28

that he lacked the required mental state to commit the offense. We thus see no clear error in the district court's finding.

## 2.     Arguments Not Considered

Mr. Sjodin raises additional arguments in his opening brief that we do not consider. For instance, Mr. Sjodin asserts that the Government committed prosecutorial misconduct and discovery violations. He did not raise these issues before the district court, and he makes no attempt to show plain error. Accordingly, we treat the arguments as waived and decline to review them "at all—for plain error or otherwise." *United States v. Leffler*, 942 F.3d 1192, 1196 (10th Cir. 2019).

He also challenges the performance of the lawyer who initially represented him and then served as advisory counsel. We generally do not review an ineffective assistance of counsel argument on direct appeal. *See United States v. Galloway*, 56 F.3d 1239, 1240 (10th Cir. 1995) (en banc) ("Such claims brought on direct appeal are presumptively dismissible, and virtually all will be dismissed."). We will consider an ineffective assistance of counsel claim on direct appeal only "where such claims were adequately developed by the district court prior to appeal." *United States v. Gallegos*, 108 F.3d 1272, 1280 (10th Cir. 1997). That record has not been developed here. Thus, this is not one of those "rare instances" in which "an ineffectiveness of counsel claim may need no further development prior to review on direct appeal." *Galloway*, 56 F.3d at 1240.

We also do not consider arguments Mr. Sjodin makes for the first time in his reply brief—that he was denied a fair trial because of an "arrest video," Reply Br. at 3, and that

the trial judge was prejudiced against him. He waived those arguments by omitting them from his opening brief. *See White v. Chafin*, 862 F.3d 1065, 1067 (10th Cir. 2017).

Moreover, we decline to address the many arguments that Mr. Sjodin has failed to brief adequately. *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 679 (10th Cir. 1998) ("Arguments inadequately briefed in the opening brief are waived."). His opening brief contains many perfunctory allegations—for example, that he "was prevented from presenting an adequate defense" by "lack of representation" and access to the court, Appellant's Br. at 7, and that he was "denied depositions," *id*. at 37. But he does not develop these conclusory assertions into arguments that can be meaningfully reviewed. In another section of his brief, Mr. Sjodin devotes many paragraphs to a discussion of solitary confinement. *Id*. at 19–23. But he fails to explain how the occurrence of solitary confinement undermines his conviction or sentence. Further, Mr. Sjodin's objections to the district court's pretrial-detention rulings are moot now that he has been convicted. *See Murphy v. Hunt*, 455 U.S. 478, 481 (1982). As a result, we do not consider these arguments further.

## IV.    CONCLUSION

We AFFIRM the district court's conviction of Mr. Sjodin under 18 U.S.C. § 922(g)(1). We REMAND this case for resentencing of Mr. Sjodin consistent with this opinion.